The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Dillard and upon the briefs and argument of counsel. The appealing party has shown good ground to reconsider the evidence. The Full Commission reverses the Deputy Commissioner's Opinion and Award and enters the following Opinion and Award.
The undersigned finds as facts and concludes as matters of law the following which were entered into by the parties at the hearing as:
STIPULATIONS
1. At the time of the alleged injury giving rise to this claim, the parties were bound by and subject to the provisions of the North Carolina Workers Compensation Act.
2. At such time, an employment relationship existed between plaintiff and defendant-employer.
3. Defendant-employer was a duly qualified self insured.
4. The parties submitted a wage chart for the calculation of plaintiff's average weekly wage. (The wage chart showed that Plaintiff's average weekly wage was $300 and his compensation rate was therefore $200 per week.)
5. A group of medical-records, consisting of 129 pages, and a vocational report, are stipulated into evidence.
* * * * * * * * * * *
Based upon all of the competent evidence in the record, the Full Commission rejects the findings made by the Deputy Commissioner and makes the following:
FINDINGS OF FACT
1. In December, 1991, plaintiff Kenneth Ralph Sanders was employed by Broyhill Furniture Industries at the Broyhill Harper plant. Plaintiff was 52 years old and had been employed by Broyhill for approximately 32 years at the time of the injury hereafter described.
2. On December 17, 1991, plaintiff was pulling a load of stock on a flatbed truck at work as part of his job duties. As he was pulling it, the load got stuck on a bolt in the floor. Plaintiff started pushing the truck and the standard that held the load on the truck broke. Plaintiff twisted and fell to the floor in between the load on the truck. He felt "sharp, sickening pain" and had to hold onto something until the pain subsided. This was an interruption in the work and constituted a specific traumatic incident and injury by accident for which plaintiff is entitled to compensation under the Workers' Compensation Act.
3. After the accident, plaintiff had a co-worker help him push his load because he could not do it himself. Plaintiff told his job supervisor, Dwight Davis, that he had hurt his back. The supervisor's testimony to the contrary is not credible. At home after work that evening, plaintiff could barely walk. The next day, plaintiff returned to work, but could not do his job alone. A coworker, Morris Parsons, helped him with his work on that day and throughout the week.
With respect to the credibility of the testimony of Dwight Davis, Davis admitted that "I don't remember dates". Although he was responsible for overseeing production in plaintiff's department, he could not remember plaintiff needing help from Morris Parsons during December of 1991. Although he was responsible for reporting daily attendance in his department, he could not recall whom he spoke to when he tried to find out why plaintiff was out of work in December of 1991. And he said he called plaintiff at home twice during December of 1991 for the express purpose of asking why plaintiff was out of work but maintains he never did determine why plaintiff was out of work.
4. After that week, plaintiff had off for Christmas vacation but was in so much pain that he "like to went crazy." He spent most of his vacation in bed. After vacation, he tried to work for two days and was unable to perform his job. He then went to his family doctor, Dr. Carpenter. He felt pain in the middle of his back and going down his right leg. Plaintiff called Reba Cobb, the insurance clerk and nurse at work to tell her he was hurt. He was eventually operated on by Dr. David Jones. After his operation, plaintiff still was in extreme pain.
5. Plaintiff did not understand Workers' Compensation, and he thought that he would get over his injury, return to work, and not need to file. Plaintiff had been hurt on the job before and had missed 6-8 weeks of work. At that time, he also did not file Workers' Compensation because he thought it was something you filed only if you were totally disabled. Plaintiff filed 13 weeks of disability under his insurance plan before filing his Workers' Compensation claim with his employer about nine months after his injury. Plaintiff filed his Workers' Compensation Claim when he finally understood about it, upon speaking with an attorney about his disability.
6. Plaintiff's delay in filing his Form 18 did not prejudice the defendant since his supervisor was aware of the on-the-job injury and the company's insurance clerk was aware that he was disabled.
7. Reba Cobb, who had been working at the plant for 16 years, spoke to plaintiff on several occasions, to help him file for short term disability, and to file his medical bills under group health insurance. Plaintiff never told her that he was injured at work, or that he wanted to file a Workers'' compensation claim until after his lawyer advised him to file a claim. She testified that in all the years that she had known plaintiff he had always been truthful and honest in his dealings with her.
8. After his injury on or about January 2, 1992 plaintiff saw Dr. Carpenter, his family physician. Dr. Carpenter gave him cortisone, took X-rays and began physical therapy for plaintiff. Despite the physical therapy the pain became worse, and plaintiff was referred by Carpenter to Dr. David Jones, a neurosurgeon, who performed a lumbar laminectomy and diskectomy for a herniated disc on February 6, 1992. Jones described plaintiff as being in "extreme pain", which continued after the operation during plaintiff's course of treatment with him until August, 1992. Jones suggested some therapy exercises for plaintiff and prescribed pain medication.
9. In his notes of February 5, 1992, Jones stated "Mr. Sanders is a fifty-two year old right-handed white male whose symptoms began in late December, just before Christmas. He was straining and pushing a furniture truck at that time when he felt a strain and pain in his sacroiliac and buttock region." On August 13, 1992, Jones wrote a letter to Broyhill Furniture Industries, stating that plaintiff had back surgery and that he had persistent pain and disability due to "myofascial pain, low-grade inflammation, and nerve dysfunction." Jones also stated that plaintiff had anxiety related to his disability. He opined that plaintiff is "permanently and totally disabled. . .He will not be able to return to a position requiring constant manual labor."
10. Jones referred plaintiff back to his family physician, Dr. Carpenter. Dr. Carpenter then referred plaintiff to Dr. Sims, who referred him to a physical therapist, Andrea Stutzman. Plaintiff attempted to do the exercises suggested by Stutzman and was given a TENS unit for pain control, which he continued to use even after discontinuing treatment with Stutzman. Unfortunately, some of the exercises made his pain much worse. All medical records confirm that plaintiff was still in extreme pain at this time and was still receiving pain medication.
11. Dr. Carpenter then referred plaintiff to Dr. Pearce, who has been treating plaintiff since September, 1992 for pain management. Dr. Pearce noted that plaintiff "developed low back pain while pushing and pulling heavy loads in December, 1991". His notes stated that plaintiff had "progressive pain intensity" involving the right sciatic area hip, leg, foot. and toes. The notes show that plaintiff wore his TENS unit daily and was given pain medication regularly, including Vicodin, Tegretal, and Livresal.
12. Dr. Pearce treated plaintiff from September, 1992 until October, 1993. His notes give plaintiff the following assessment: Lumbar radiculitis, chronic myofascial pain syndrome, lumbar laminectomy, and myokyrnia. The notes consistently describe plaintiff as having extreme pain in the neck, head, hip, and leg areas. They further describe plaintiff as having difficulty walking, sitting, stooping, and twisting. Contrary to defendant's contentions, there is no indication in Pearce's notes, or in any of the medical notes on plaintiff, that plaintiff had a substance abuse problem and was intentionally abusing his pain prescriptions. The notes all indicate that plaintiffs treating physicians prescribed medications appropriately and that plaintiff used medications solely for the purposes required by his physicians.
13. Plaintiff was evaluated by Vocational Consultants at Blue Ridge Vocational Services on October 11, 1993. After extensive testing, the consultants concluded that plaintiff had a "great deal of difficulty with any physical exertion". He had "extremely limited" tolerance for sitting and standing. His performance indicated that "he is not capable of returning to his previous work, or to any job as it is typically performed in the national economy." The consultants stated that plaintiff cooperated fully, attempted every task required of him and "the psychometric section revealed no indications of deception." The consultants also noted that plaintiff and his wife reported his taking an active role in rehabilitation, using exercise and relaxation techniques at home.
14. Although plaintiff saw a series of careproviders, each visit was based upon a referral from a previous physician. Plaintiff was not picking and choosing doctors in order to suit his taste or in order to circumvent proper treatment procedures. Rather, his treatment was logically related to the progression of his injury. Medical notes from January, 1999 through October, 1993 corroborate plaintiff's testimony about the date of his injury, the nature of his injury and treatment, and the extent of his pain.
15. Plaintiff has been unable to work in his former position with defendant employer or any other employer since 17 December 1991 as a direct result of his injury by accident on that date and such disability continued to the date of this Opinion and Award.
* * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
CONCLUSIONS OF LAW
1. Plaintiff suffered a compensable injury by accident involving a specific traumatic incident on 17 December 1991 during the course and scope of his employment with defendant Broyhill. G.S. 97-2 (6).
2. Plaintiff's medical treatment was designed to effect a cure, give relief or lessen the period of disability and is therefore compensable under the Workers' Compensation Act. G.S.97-25 and G.S. 97-59.
3. Defendant was not prejudiced by plaintiff's failure to file a Form 18 until approximately 9 months after the injury by accident. G.S. 97-22.
4. As a result of the compensable injury, plaintiff has been continuously disabled since 17 December 1991 and is entitled to temporary total disability compensation from 17 December 1991 until he returns to work or until further order of the Industrial Commission. G.S. 97-29.
* * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission reverses the holding of Deputy Commissioner Dillard and enters the following:
AWARD
1. Plaintiff's claim for benefits under the Workers'' Compensation Act must be, and the same is, hereby GRANTED.
2. Subject to the attorney's fee hereafter awarded, defendant shall pay to the plaintiff in a lump sum temporary total disability compensation at the rate of $200.00 per week for the period from 17 December 1991 through the date of this Opinion and Award, with interest thereon at the rate of 8% per annum from 23 September 1994 (the date of the hearing before Deputy Commissioner Dillard) until paid. Defendant shall pay to plaintiff's attorney 25% of the compensation amount. All of the interest shall be paid to plaintiff. Thereafter defendant shall pay to plaintiff temporary total disability compensation at the rate of $200 per month, with every fourth check going to plaintiff's attorney, until further order of the Industrial Commission.
3. Defendant shall pay the medical providers in accordance with the Commission's fee schedule as it was constituted from time to time.
4. Defendants shall pay all other costs in this matter.
 S/ ______________________________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/ ______________________________ COY M. VANCE COMMISSIONER
DISSENTING:
S/ ______________________________ DIANNE C. SELLERS COMMISSIONER